UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE

ESTON ARTHUR ELDRIDGE                                              CASE NO. 15-60312

DEBTOR

UNITED FIRE & CASUALTY COMPANY                                     PLAINTIFF

V.                                                                 ADV. NO. 15-6014

ESTON ARTHUR ELDRIDGE                                              DEFENDANT

MEMORANDUM OPINION

Plaintiff United Fire & Casualty Company ("United Fire") filed this adversary proceeding [ECF No. 1] seeking a finding of non-dischargeability under 11 U.S.C. § 523(a)(4) ("fraud or defalcation while acting in a fiduciary capacity") for claims arising from that certain Agreement of Indemnity dated December 27, 2000, given by Debtor Defendant Eston Arthur Eldridge and G.W.S. Contractors, Inc. ("G.W.S. Contractors") for the benefit of United Fire (the "Indemnity Agreement"). [ECF No. 1-1.] G.W.S. Contractors was a general contractor operated by Eldridge. Eldridge argues for dismissal pursuant to FED. R. CIV. P. 12(b)(6) (incorporated by FED. R. BANKR. P. 7012) because he claims any debt he owed to United Fire arising from the Indemnity Agreement was discharged in a prior bankruptcy. For the reasons stated more fully herein, the Debtor Defendant's Motion to Dismiss is granted.

I.  **Facts.**

   A.  **Source of United Fire Claims.**

On December 27, 2000, Eldridge, acting for himself and in his capacity as President of G.W.S. Contractors, executed the Indemnity Agreement. The Indemnity Agreement indemnified

United Fire for losses on surety bonds issued on behalf of G.W.S. Contractors. United Fire issued surety bonds for G.W.S. Contractors until the business terminated in April 2003.

In August 2003, United Fire filed suit against Eldridge and G.W.S. Contractors for losses paid on certain surety bonds in the U.S. District Court for the Eastern District of Kentucky, being case no. 6:03-446-DCR (the "2003 Lawsuit"). [ECF No. 1.] United Fire obtained a Default Judgment against Eldridge on April 30, 2004, in the amount of $1,520,314.80, plus interest. Default Judgment, *United Fire & Cas. Co. v. GWS Contractors, Inc.*, No. 6:03-446-DCR (E.D. Ky. Apr. 30, 2004), ECF No. 17. On July 21, 2004, United Fire filed judgment liens against Eldridge's property in Clay County and Laurel County, Kentucky. [ECF No. 9-1 (Clay Co.); Case No. 05-62750 ECF No. 13 at 3-4 (Laurel Co.).]

In June 2004, Robert Eldridge, Eldridge's brother, d/b/a Blue Heron, sued Eldridge and G.W.S. Contractors in the Pike County Circuit Court, being case no. 04-CI-00886 (the "2004 Lawsuit"). [ECF No. 18-4 at ¶ 5.] United Fire was also named as a defendant based on a payment bond issued to the Mountain Water District for the underlying project. *Id.* On September 30, 2004, Blue Heron obtained a default judgment against Eldridge in the amount of $208,763.02. [*Id.* at ¶ 6.] Blue Heron was also awarded summary judgment against United Fire based on the bond. United Fire's appeal was ultimately denied and on October 27, 2008, United Fire paid Blue Heron $298,363.03. [*See id.* at ¶ 11.] An Order of Satisfaction of Judgment was entered by the Pike Circuit Court on November 5, 2008. [ECF No. 18-3.]

**B. The 2005 Bankruptcy (Case No. 05-62750).**

Eldridge and his wife, Sherry J. Eldridge, filed bankruptcy under Chapter 7 of the Bankruptcy Code on October 14, 2005. [Case No. 05-62750 ECF No. 1.] Eldridge disclosed the 2003 Lawsuit and the 2004 Lawsuit in his Statement of Financial Affairs ("SOFA") filed with

2

the bankruptcy Petition, indicating judgment was entered in the first and the other was pending. [*Id.* at 83-84.]

Eldridge also listed United Fire as a creditor holding unsecured, non-priority claims on his Schedule F at three different addresses:

| United Fire & Casualty Co<br>P.O. Box 73909<br>Cedar Rapids IA 52407-3909 | United Fire & Casualty Co<br>c/o Hon Timothy D Martin<br>Republic Bank Place Ste 200<br>661 South Hurstbourne Pkwy<br>Louisville KY 40222 5079 | United Fire & Casualty Co<br>c/o Alber Crafton<br>Hurstbourne Place Suite 1300<br>9300 Shelbyville Road<br>Louisville KY 40222 |
|---|---|---|
| Consideration for Claim – Bonding Company | Consideration for Claim – Surety Bonds | Consideration for Claim – Judgment Debt |
| Amount of Claim - $1,600,000.00 | Amount of Claim - $805,000.00 | Amount of Claim – Already Listed |

[*Id.* at 73.][1]  The three addresses include: (1) a corporate post office box, (2) the address listed for United Fire's attorneys in the 2003 U.S. District Court Action, and (3) the address listed for United Fire on judgment liens filed in the Offices of the Laurel and Clay County Clerks.

The record of the 2005 bankruptcy case shows that the Bankruptcy Court Clerk sent notice of the filing to United Fire at the above addresses on November 2, 2005.  [Case No. 05-62750 ECF No. 5 at 1, 6.]  The notice included the following statement in bold:  "**Deadline to File a Complaint Objecting to Discharge of the Debtor *or* to Determine Dischargeability of Certain Debts:  02/13/06**."  [*Id.* at 1 (emphasis in original).]  United Fire does not dispute receiving notice of Eldridge's 2005 bankruptcy and took no action in that case.

On January 17, 2006, Eldridge filed motions seeking to avoid judgment liens filed by United Fire, and related to the 2003 Lawsuit, using the Shelbyville Road address (which matched the address of the judgment creditor on the lien).  [Case No. 05-62750 ECF Nos. 12 and 13

---

[1] Schedule F also included a $208,763.02 judgment debt due to Robert Eldridge, dba Blue Heron, c/o Hon Larry W Gilliam, PO Box 1570, London KY 40743 1570.  [Id. at 68].

(Laurel Co.) and 14 and 15 (Clay Co.).] United Fire did not object, and Eldridge's motions were granted on February 6, 2006. [Case No. 05-62750 ECF Nos. 21 and 22 (Laurel Co.) and 23 and 24 (Clay Co.).] Certificates of Service indicating that United Fire was served with a copy of the Orders avoiding its judgment liens were filed in the record on February 9, 2006, again using the Shelbyville Road address. [Case No. 05-62750 ECF Nos. 28 and 29 (Laurel Co.) and 30 and 31 (Clay Co.).]

The Court entered an Order granting Eldridge and his wife a discharge under 11 U.S.C. § 727 on March 25, 2006. [Case No. 05-62750 ECF No. 45.] The Discharge Order was mailed on the same date by the Bankruptcy Court Clerk to United Fire at the addresses already described. [Case No. 05-62750 ECF No. 46.]

### C. The 2015 Bankruptcy (Case No. 15-60312) & Adversary Proceeding (Adv. No. 15-6014).

Eldridge filed an individual chapter 7 bankruptcy petition on March 17, 2015. [Case No. 15-60312 ECF No. 1.] Eldridge again listed United Fire on Schedule F as follows, using the same Shelbyville Road addresses as in the 2005 bankruptcy case:

> United Fire & Casualty Company
> c/o Timothy D. Marton, Jason B. Myers, &
> Hurstbourne Place, Suite 1300
> 9300 Shelbyville Road
> Louisville KY 40222
>
> Consideration for Claim –    business debt
>                              Judgment
>
> Amount of Claim – $1,520,314.80

[*Id.* at 28.]

United Fire was listed on Schedule F "because a search of the Clay County Clerk's records showed that the judgment lien of United Fire had not been released and because Debtor did not remember that United Fire was included in his last bankruptcy." [ECF No. 9 at ¶ 9.]

4

Eldridge has since amended Schedule F to list the United Fire debt as "Disputed," and to clarify his position that the debt was discharged in the prior bankruptcy. [Case No. 15-60312 ECF No. 20.] Eldridge declared that G.W.S. Contractors ended its operations on April 23, 2003, in his 2015 SOFA. [Case No. 15-60312 ECF No. 1 at 41.]

### D. Procedural History.

This matter came before the Court for hearing on August 19, 2015 [ECF No. 20], on Eldridge's Motion to Dismiss Adversary Complaint Pursuant to FED. R. CIV. P. 12(b)(6) [ECF No. 9], the Response in Opposition [ECF No. 18] filed by United Fire, and Eldridge's Reply [ECF No. 19]. After the hearing, the parties were allowed to supplement the record to address specific issues raised by United Fire. [ECF No. 25.] The matter was submitted after United Fire filed its Sur-Reply to Defendant's Motion to Dismiss [ECF No. 30] and Eldridge filed his Reply [ECF No. 31], and is now ripe for decision.

## II.   DISCUSSION

United Fire argues that it has pleaded sufficient facts to support its non-dischargeability complaint to survive a dismissal request. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is not plausible if there is clearly no obligation due to the claimant. The Debtor received a discharge of the underlying claims of United Fire related to the surety bonds and the Indemnity Agreement in the 2005 bankruptcy case. United Fire did not seek to make the debts non-dischargeable in the 2005 bankruptcy case, despite full disclosure of the obligations and an abundance of examples of notice to United Fire that the case was ongoing and its rights were being affected.

**A. United Fire's Claims under the Indemnity Agreement and Surety Bonds Arose Prior to the 2005 Bankruptcy Case.**

It is easy to conclude from the record that any liability Eldridge owed to United Fire under the Indemnity Agreement arose before the 2005 bankruptcy petition was filed. A "claim" is broadly defined in 11 U.S.C. § 101(5) to encompass any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A); *see also Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 2154, 115 L. Ed. 2d 66 (1991) (Congress intended the broadest available definition of "claim"); *In re Huffy Corp.*, 424 B.R. 295, 301 (Bankr. S.D. Ohio 2010) (contingent debts are "claims").

There are different ways to determine when a claim accrues for purposes of treatment in a bankruptcy proceeding. "The Sixth Circuit has not adopted any [particular method] for determining when a claim arises for the purpose of § 101(5); however, other courts within the Circuit have adopted either the relationship/fair contemplation approach or the conduct approach." *In re Cleveland*, 349 B.R. 522, 530 (Bankr. E.D. Tenn. 2006) (examining in detail three approaches courts have used to determine when a claim arises: (1) the accrued-state-law-claim approach, (2) the conduct approach, and (3) the pre-petition-relationship approach); s*ee, also, Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 129 (2d Cir. 2000) (under the relationship approach "a right to payment based on a written indemnification contract arises at the time the indemnification agreement is executed.").

A detailed discussion of these approaches is not required because the record shows United Fire's claims under the Indemnity Agreement at least arose before the 2005 bankruptcy petition was filed, even if they remained contingent. The Indemnity Agreement was executed in December 2000, and United Fire claims losses related to surety bonds issued pursuant to that

6

agreement. All but one surety bond at issue in this adversary proceeding, Bond No. 54-134774 issued for the benefit of the City of Manchester [ECF No. 1-2 at 47-63], were disclosed in the Complaint filed in the 2003 Lawsuit. [ECF No. 1 ¶ 7]; Complaint ¶ 8, *United Fire & Cas. Co. v. GWS Contractors, Inc.*, No. 6:03-446-DCR (E.D. Ky. Aug. 15, 2003), ECF No. 1. Although the newly listed surety bond on the City of Manchester project is undated, a document footer ("01147/10/24/02") on each page of the bond suggests it was issued, and the potential for any claims on it arose, in October 2002.

The record also shows G.W.S. Contractors ceased business prior to the 2005 bankruptcy case, as Eldridge reported no income from the business in the two years preceding the bankruptcy and was a defendant in numerous collection actions relating to G.W.S. [Case No. 05-62750 ECF No. 1 at 82-84.] Eldridge disclosed in his 2015 SOFA that G.W.S. Contractors actually ceased operations in April 2003. Therefore, no additional surety bonds would have issued after this date. None of the bonds referenced in the record by United Fire contradict this. [*See* ECF No. 1-2.]

Further, even though the Blue Heron claim was not paid until 2008, the litigation involving the losses and United Fire's potential liability as a surety was known when the 2004 Lawsuit was filed, well before Eldridge's 2005 bankruptcy case. Even though the Pike Circuit Court did not liquidate the claim against Eldridge or United Fire until shortly after the 2005 petition date, any right to payment already existed. Thus, the record confirms United Fire knew about any obligation Eldridge had under the Indemnification Agreement and surety bonds at the time the 2005 bankruptcy case was filed.

The losses sustained by United Fire stemming from the Indemnity Agreement that it executed with Eldridge constitute claims within the Bankruptcy Code's broad definition of that

7

term in § 101(5)(A). Then, when the discharge order was entered, these claims were discharged. [Case No. 05-62750 ECF No. 45.]

### B. United Fire Had Notice of the 2005 Bankruptcy Case.

The facts set out above show Eldridge declared bankruptcy in 2005, listing United Fire in its schedules as a creditor holding unsecured, non-priority claims related to its judgment debt against him and its status as surety. In his 2005 SOFA, Eldridge disclosed the 2003 Lawsuit and the 2004 Lawsuit. Eldridge's schedules listed United Fire as a creditor at three separate addresses, each of which should have provided notice to United Fire.

United Fire also received other communications, including those related to the lien releases and the discharge, which plainly showed its rights were being affected. The notice of the bankruptcy proceeding also told United Fire that it had to act in a timely manner to preserve any non-dischargeability action. The record of the 2005 bankruptcy reveals that United Fire took no action to participate in or protect any existing claims against Eldridge.

### C. United Fire's § 523(a)(4) Claims for Non-Dischargeability Against Eldridge Were Discharged Based on its Failure to Raise Them in his Prior Bankruptcy.

In its Sur-Reply, United Fire argues that "beneficial interests to trust funds are not dischargeable because such funds are not part of the bankruptcy estate." [ECF No. 30.] Citing *Poynter v. Great Am. Ins. Co. (In re Poynter)*, 535 Fed. Appx. 479 (6th Cir. 2013), United Fire claims that it was the beneficiary of a trust fund, as opposed to a mere claimant. As such, its claim was not subject to discharge. But any trust fund would have existed in the name of G.W.S. Contractor, not Eldridge. There was no trust fund held by Eldridge to benefit United Fire at the time of the 2005 bankruptcy case, so United Fire only had an unsecured claim for money damages.

8

Further, United Fire did not act in a timely manner to declare any claims non-dischargeable under § 523(a)(4).  Section 523(c) provides that a

> debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section."

11 U.S.C. § 523(c)(1).

FED. R. BANKR. PROC. 4007(c)(1) requires that the creditor seeking to determine non-dischargeability under § 523(a)(4) must file its complaint "no later than 60 days after the first date set for the meeting of creditors."  Therefore, any obligation for defalcation alleged in the current adversary complaint was discharged in the 2005 bankruptcy when United Fire failed to initiate a claim of non-dischargeability within the time frame imposed by Rule 4007(c) and Debtor was discharged as set out in § 523(c)(1).  *See Kontrick v. Ryan*, 540 U.S. 443, 448, n.3 (2004) (time limitations like Rule 4007(c) "afford the debtor an affirmative defense to a complaint filed outside the [time] limits"); *In re Bajas*, 443 B.R. 768, 774 (Bankr. E.D. Mich. 2011) (while Rule 4007(c) is not jurisdictional, late-filed claims are subject to dismissal absent special circumstances).

United Fire argues that Rule 4007(c) does not apply because it asserts a claim under § 523(a)(4), not § 523(c)(1). [ECF No. 18 at 12.]  This argument is hard to understand.  Section 523(c)(1) merely indicates when a claim brought pursuant to § 523(a)(4) is discharged.  There is no action to bring under § 523(c)(1).

Accordingly, United Fire's claim is now barred and subject to dismissal based on its failure to timely object to discharge in the 2005 bankruptcy.

9

### III. CONCLUSION

Based on the foregoing, Debtor Defendant Eston Arthur Eldridge's Motion to Dismiss Adversary Complaint Pursuant to FED. R. CIV. P. 12(b)(6) [ECF No. 9] is granted and this adversary proceeding is dismissed with prejudice. A separate order will be entered contemporaneously herewith.

10

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Wednesday, October 14, 2015
(grs)